conspicuous."); Cowen v. Federal Express Corp., 25 F. Supp. 2d 33, 37 (D. Conn. 1998) (dismissing

breach of contract claim stating, "Federal Express repeatedly disclaims any intention to contract,

stating throughout the Manual, in no uncertain terms, that its provisions are mere guidelines which

do not give rise to an express or implied employment contract."); Manning, 807 F. Supp. at 895

(holding that defendant's disclaimer stating that the manual was "not an employment contract . . .

precludes plaintiff's first two counts [breach of contract claims]."); Lombardi v. Marketing Corp. of

America, No. CV 91 0293281, 1994 Conn. Super. LEXIS 1383, *7 (Conn. Super. Ct. May 23, 1994)

(Shea Aff., Ex. 6) (concluding that "based on the disclaimer, [defendant] protected itself from any

claims of contract based on the Employee Handbook."); Markgraf v. Hospitality Equity Investors,

No. 30 85 01, 1993 Conn. Super. LEXIS 426, *8 (Conn. Super. Feb. 18, 1993) (Shea Aff., Ex. 7)

(language in employee handbook introduction stating "the contents of the handbook are presented as

a matter of information only, and are not meant to be a contract . . ." held to be sufficient disclaimer);

Grieco v. Hartford Courant Co., No. CV 90 0372593 S, 1993 Conn. Super. LEXIS 298, *7-*8

(Conn. Super. Ct. Jan. 29, 1993) (Shea Aff., Ex. 8) (language on first page of employee handbook

stating "the handbook and any of the statements made herein are not to be construed as nor is it a

contract . . ." held to be sufficient disclaimer); Wallace v. Gaylord Farm Assoc., No. CV 89-

0233770S, 1992 Conn. Super. LEXIS 2397, *2 (Conn. Super. Ct. Aug. 10, 1992) (Shea Aff., Ex. 9)

("The Employee Manual does, therefore contain language stating that it should not be construed as a

contract and disclaiming any intent to contract.  Under such circumstances, the [defendant's]

Employee Manual cannot be construed as a contract.").  The Second Circuit has also recognized that

a contract claim should be dismissed when the handbook contains a valid disclaimer.  See Vasquez

v. New Britain General Hosp., No. 95-7740, 1996 U.S. App. LEXIS 6197, *2 (2d Cir. Apr. 1, 1996)

(Shea Aff., Ex. 10) (stating that "a contract claim based on an Employee Handbook was properly

dismissed since the handbook plainly states, in clear language and adequate type size, that the handbook does not create contractual rights"). Based on the foregoing cases, contract liability does not arise where employers include appropriate disclaimer language in an employee manual.

2.     The Online Guide Cannot Form The Basis Of A Contract Because Mass Mutual Expressly Disclaimed Any Intent To Contract On Every Page Of The Guide

Plaintiff claims that the Progressive Discipline policy of the Online Guide created a contract of employment with her by which she could not be terminated without first having an opportunity to correct any problems with her conduct or work performance. (Pl. Dep., pp. 85-86; Complaint, First Count, ¶¶ 38-42.) Plaintiff claims that Mass Mutual violated this alleged contract because she was terminated without progressive discipline. (Pl. Dep., p. 86; Complaint, First Count, ¶ 42.)

As in Davis, Cardona, Cowan, Manning and the other cases cited above, Plaintiff's claim for breach of contract based on the Online Guide should be dismissed as a matter of law because Mass Mutual expressly disclaimed any intent to contract on every page of the Online Guide. Thus, the Online Guide cannot form the basis of a contract between Plaintiff and Mass Mutual when Mass Mutual clearly, prominently and repeatedly disclaimed its intent to enter into a contractual commitment based on the Online Guide. On the introductory page of the Online Guide, it states:

> Disclaimer: This Guide does not create a contract of employment. The Company reserves the right to amend, modify, change, suspend or cancel all or any part of the policies, practices, services, benefits or other portions of this Guide at any time, or from time to time, with or without notice. Here is the full text of the disclaimer. (underline in original.)

(Craig Aff., Ex. 1.) Mass Mutual included the above contract disclaimer on every page of the Online Guide, including the page containing Mass Mutual's Progressive Discipline policy on which Plaintiff relies as the basis for her alleged contract. (Craig Aff., Exs. 1-4; Craig Aff., ¶¶ 3-8.)

The Online Guide also contained a full disclaimer which employees could access by clicking on the underlined text of the disclaimer statement set forth above.  Additionally, on the left hand side of every page of the Online Guide, there was a separate link to the text of the full disclaimer contained in a rectangular box entitled "Disclaimer."  (Craig Aff., ¶¶ 4, 5.)  Mass Mutual's full disclaimer reads as follows:

> The Company reserves the right to amend, modify, change, suspend or cancel all or any part of the policies, practices, services, benefits or other portions of this Guide at any time, or from time to time, with or without notice.  This Guide . . . is intended only to provide general information and guidance relative to policies and benefits of the Company.  The Company is an at-will employer, which means that both an Employee and the Company are free at any time to end the employment relationship without notice or cause. **Neither this Guide nor any other policies, practices or benefits of the Company create an express or implied employment contract between an Employee and the Company.**

(Craig Aff., Ex. 2; emphasis in original.)  This disclaimer could be accessed from every page of the Online Guide by utilizing the link at the bottom of the page or the link in the rectangular box on the left side of each page.  (Craig Aff., ¶¶ 4, 5.)

The Online Guide also contained Mass Mutual's Progressive Discipline policy. (Craig Aff., Ex. 3; Pl. Dep., pp. 84-85.)  The Progressive Discipline policy stated, in part:

> From time to time, problems arise that relate to attendance, work performance or behavior.  Wherever possible, employees with more than three months' service will be given the opportunity to correct such problems.

> Management counseling often solves the problem, but if this is ineffective, in most cases Corporate Human Resources will be contacted and the employee may be issued a warning, placed on probation, or suspended without pay for a period of time.  Typically, a written statement of the problem and steps needed to correct it will be given to the employee by the employee's manager. . . . If the problem is not corrected, further disciplinary action up to and including termination can occur.

(Craig Aff., Ex. 3.) The bottom of the Progressive Discipline policy contained the same contract disclaimer set forth on every other page of the Online Guide: "Disclaimer: This Guide does not create a contract of employment. . . ." (Craig Aff., Ex. 3.)

Mass Mutual's Progressive Discipline policy cannot form the basis of a contractual agreement because, like <u>every</u> <u>page</u> of the Online Guide, it contains a clear and prominent contract disclaimer disclaiming any intent to contract and confirming Plaintiff's employment at-will status. (Craig Aff., Ex. 3; Craig Aff., ¶ 7.) These disclaimers, as well as the contract disclaimer provisions included on Plaintiff's Application of Employment ("I also understand that employment with the Company is 'at-will,' for no fixed period of time and may be terminated by me or the Company at any time for any reason . . . with or without cause, with or without reason."), on Plaintiff's Offer Letter ("All employment at MassMutual is at will, meaning that both you and the Company are free at any time to end the employment relationship for any reason."), and on the Employees Responsibilities policy ("Of course, all employment at Mass Mutual is at-will, which means that both you and the company are free at any time to end the employment relationship for any reason.") preclude a finding that Mass Mutual entered into a contractual relationship with Plaintiff for anything but at-will employment. (Shea Aff., Exs. 1, 2.)

Plaintiff's claim should also be dismissed because she improperly relies on the Progressive Discipline policy of the Online Guide in support of her alleged contract while ignoring the disclaimer provisions which appear on the very same page.  Plaintiff cannot pluck the Progressive Discipline policy from the Online Guide as the basis for her alleged contract and disregard the remainder of the page where it states, "This **Guide** does not create a contract." <u>See</u> <u>Reynolds</u>, 40 Conn. App. at 730 (citing <u>Christensen</u>, 18 **Conn.** App. at 458 (rejecting attempt by plaintiff to base alleged contract on select phrases of employer's written bonus policy). Instead,

24

Plaintiff must take the Online Guide in its entirety, including the contract disclaimer provision which appears on every page of the Online Guide and the Online Guide's full disclaimer provision.

It is difficult to imagine what additional efforts Mass Mutual could have undertaken to more clearly and more conspicuously disclaim its intent to contract with Plaintiff based on the Online Guide. Plaintiff cannot demonstrate a genuine issue of material fact when, on every page of the Online Guide, Mass Mutual clearly, prominently, expressly and repeatedly stated: "This Guide does not create a contract of employment." Moreover, there can be no mutual understanding or meeting of the minds necessary for the formation of a contract when Mass Mutual repeatedly disclaimed in writing any intent to contract and expressly confirmed Plaintiff's at-will status. Plaintiff admitted as much when she testified, "I can see that it says the guide does not create a contract of employment, so from that I can say that as I sit here at this very moment, I can see that they did not intend [to create a contract of employment]." (Pl. Dep., pp. 88-89.)[15]

---

[15] Plaintiff's claim that she did not read the disclaimer provisions at issue does not negate the effectiveness of the disclaimers and is insufficient to avoid summary judgment. In Gallo v. Eaton Corp., 122 F. Supp. 2d 293 (D. Conn. 2000), the court rejected the plaintiff's claim that the at-will disclaimer in the defendant's employee handbook was ineffective because he did not sign an acknowledgement until two years after he received his handbook and because he merely "flipped through" the handbook. Gallo, 122 F. Supp. 2d at 309-10. The court granted summary judgment finding, "neither Finley nor Gaudio suggest that an employer must expressly acknowledge a disclaimer for it to have any effect. Rather, both of these decisions address only the need to include such disclaimers or 'eschewing language' in the handbook." Gallo, 122 F. Supp. 2d at 310. See Pepe v. Rival Co., 85 F. Supp. 2d 349, 384 (D.N.J. 1999) (plaintiff's failure to read at-will disclaimer in employee handbook "does not prevent the disclaimer from binding him"); Bear v. Volunteers of America, Wyoming, Inc., 964 P.2d 1245, 1251 (Wyo. 1998)(contract claim dismissed despite plaintiff's claim that she did not receive a copy of the at-will disclaimer because "[w]hether or not [plaintiff] read or signed [the disclaimer] makes no legal difference."); Elliot v. Board of Trustees of Montgomery County Community College, 655 A.2d 46, 51-52 (Md. App. 1994) (affirming dismissal of contract claim noting that "it is not necessary that an employee actually read a disclaimer in order for it to be valid"); Kirberg v. West One Bank, 872 P.2d 39, 40-42 (Utah App. 1994) (affirming dismissal of contract claim despite plaintiff's failure to read at-will disclaimers on employment application and company handbook); McCabe v. Sears, Roebuck and Co., No. 89-CV-72187, 1990 U.S. Dist. LEXIS 19743, *9-*10 (E.D.Mich. May 30, 1990) (plaintiff's failure to read or sign at-will

25

In light of Mass Mutual's express disclaimers, Plaintiff cannot establish, as a matter of law, that Mass Mutual "agreed, either by words or action or conduct, to undertake some form of actual contract commitment" to her based on the Online Guide. See Reynolds, 40 Conn. App. at 730. Accordingly, Plaintiff's claims for breach of contract and breach of implied contract based on the Online Guide should be dismissed.

3.    The Compliance Guide Cannot Form The Basis Of A Contract Because Mass Mutual Expressly Disclaimed Any Intent To Contract

Plaintiff also claims that the Compliance Guide constituted part of her alleged contract with Mass Mutual. (Pl. Dep., p. 147.) As support for her claim, Plaintiff relies on three sentences plucked from various pages of the Compliance Guide. (Pl. Dep., pp. 150-52) On page 4 of the Compliance Guide, it states, "MassMutual will . . . [t]reat its employees consistently with integrity and fairness in all dealings." (Shea Aff., Ex. 3, p. 4.) Plaintiff also relies on page 5 of the Compliance Guide where it states, "Our Company demands the highest standards of ethical conduct. These standards will be enforced at all levels, fairly and without prejudice." (Shea Aff., Ex. 3, p. 5.) Plaintiff also relies on page 7 of the Compliance Guide, which states, "The Company is committed to maintaining a nondiscriminatory workplace where all employees are treated with fairness and respect." (Shea Aff., Ex. 3, p. 7.) Although Plaintiff was not even aware of these specific provisions of the Compliance Guide until after she was discharged, she claims that they constituted a contract of employment between her and Mass Mutual. (Pl. Dep., pp. 159-61.)

Essentially, Plaintiff claims Mass Mutual violated the terms of the alleged contract created by the Compliance Guide because it terminated her employment but did not discharge Mr.

---

disclaimer "has no legal significance")(Shea Aff., Ex. 11); Arnold v. Diet Center, Inc., 746 P.2d 1040, 1043 (Idaho Ct. App. 1987) (affirming dismissal of contract claim despite plaintiff's failure to recollect receiving employment at-will disclaimer).

26

Derouin. Plaintiff contends that even though Mr. Taylor and Ms. Curtis were also terminated for

their involvement in the events of November 29, 2001, she was not treated "fairly" because Mr.

Derouin only received a written warning. (Pl. Dep., pp. 150-52, 170-72; Complaint, First Court, ¶

43.)

        As with the Online Guide, Mass Mutual expressly disclaimed any intent to enter into

a contractual commitment based on the Compliance Guide. The second page of the Compliance

Guide is titled "Disclaimer" in large bold type and states,

> The Company is an at-will employer, which means that both employees and
> the Company are free at any time to end the employment relationship without
> notice or cause. **Neither this guide nor any other policies, practices or
> benefits of the Company create an express or implied employment
> contract between the employer and the Company.**

(Shea Aff., Ex. 3; emphasis in original.) As recently as October 15, 2001, less than two months prior

to her termination, Plaintiff electronically confirmed her receipt and acceptance of terms of the

Compliance Guide, including its employment at-will disclaimer. (Craig Aff., Ex. 5; Craig Aff., ¶ 9.)

In addition to the clear and conspicuous disclaimer language, Plaintiff testified that she understood,

based on this language, that she was employed at-will and that both she and Mass Mutual were free

to end their employment relationship at any time without notice and without cause. (Pl. Dep. pp.

158-59.) Plaintiff also understood, and testified that it was "fairly clear," that Mass Mutual did not

intend the Compliance Guide to constitute a contract of employment. (Pl. Dep. p. 159.)

        In support of her alleged contract, Plaintiff improperly "plucks phrases out of context"

by selectively quoting from three sentences of Mass Mutual's Compliance Guide while ignoring the

disclaimer provision in the Compliance Guide. See Reynolds, 40 Conn. App. at 730. Based on the

express and conspicuous contract disclaimer on the second page of the Compliance Guide, as well as

the contract disclaimers contained on Plaintiff's Application of Employment, Offer Letter and Online

Guide, Plaintiff cannot establish the existence of an "actual agreement" between her and Mass

Mutual based on the Compliance Guide.  Plaintiff's claim also fails because there cannot be an

"actual agreement" giving rise to contract liability based on provisions of the Compliance Guide of

which Plaintiff was not even aware until after her discharge.  See Burnham, 50 Conn. App. at 388.

Accordingly, Plaintiff's breach of contract and breach of implied contract claims based on the

Compliance Guide should be dismissed as a matter of law.

> C.    Plaintiff's Claims For Breach Of Express And Implied Contract Fail Because There
>        Is No Evidence That Mass Mutual Made A Definite Promise To Plaintiff

Plaintiff's claims for breach of express and implied contract should also be dismissed

because, even ignoring the Mass Mutual's express disclaimers, there is no evidence that Mass

Mutual made a sufficiently definite promise to establish contract liability.  The general rule of

employment at-will "may be modified by acts of the employer which are sufficiently definite to

establish an express contract between the parties." Kelly v. U.S. Shoe Corp., No. CV 93 042492S,

1993 Conn. Super. LEXIS 2926, *4-*5 (Conn. Super. Ct. Nov. 5, 1993)(Shea Aff., Ex. 12).  An

enforceable contract "must be definite and certain as to its terms and requirements . . . . So long as

any essential matters are left open for further consideration, the contract is not complete." Geary v.

Wentworth Laboratories, 60 Conn. App. 622, 627, 760 A.2d 969 (Conn. App. 2000) (citing L & R

Realty v. Conn. Nat. Bank, 53 Conn. App. 524, 732 A.2d 181, cert. denied, 250 Conn. 901, 734 A.2d

984 (1999)).

A threshold issue in cases involving reliance upon an employee handbook is whether

the handbook at issue contains the requisite elements to constitute an enforceable contract.  To

constitute an offer to contract:

> [a] promise must be sufficiently certain in its terms to enable the court to
> understand what the promisor undertakes . . . [M]ere expression of intention

28

or general willingness to do something on the happening of a particular event
or in return for something to be received does not amount to an offer.

Christensen, 18 Conn. App. at 458 n.2 (quoting Williston on Contracts §§24, 26 (3d ed.)).  See

D'Ulisse-Cupo v. Board of Directors of Notre Dame High Sch., 202 Conn. 206, 214-15, 520 A.2d

218 (1987) (to support contract liability, the representations of the employer must be sufficiently

definite to manifest a present intention to undertake immediate contractual obligations); Owens v.

American Nat'l Red Cross, 673 F. Supp. 1156, 1166 (D. Conn. 1987) (an employee manual must

contain definitive terms to support an employee's claims that a contract has been created).  As set

forth in more detail below, neither the Online Guide or the Compliance Guide contain a definite

promise sufficient to support contract liability.

      1.      **The Online Guide Does Not Contain A Definite Promise Sufficient To Support Contract Liability**

          Plaintiff's claims for breach of contract and breach of implied contract based on the

Online Guide fails because the text of the Progressive Discipline policy on which Plaintiff relies is

insufficiently definite to establish that Mass Mutual made a contractual promise to her.  The

Progressive Discipline policy states as follows:

> From time to time, problems arise that relate to attendance, work performance or behavior.  Whenever possible, employees with more than three months' service will be given the opportunity to correct such problems.
>
> Management counseling often solves the problem, but if this is ineffective, in most cases Corporate Human Resources will be contacted and the employee may be issued a warning, placed on probation, or suspended without pay for a period of time.  Typically, a written statement of the problem and steps needed to correct it will be given to the employee by the employee's manager.  A copy of this statement will be retained with the employee's employment records.  If the problem is not corrected, further disciplinary action up to and including termination can occur.

(Craig Aff., Ex. 3; emphasis added.)

Mass Mutual's use of conditional terms like "whenever possible," "in most cases," "may be" and "typically" establishes that the Progressive Discipline policy does not constitute a contractual promise sufficient to support liability. Such terms do not indicate an intent to be bound to Plaintiff or support the existence of an actual contract commitment. Instead, the plain language of Mass Mutual's Progressive Discipline policy explains that Mass Mutual "may" utilize progressive discipline "whenever possible." Thus, the very text of the Progressive Discipline policy on which Plaintiff relies belies her claim that the policy constituted a contractual promise to her.

2.    The Compliance Guide Does Not Contain A Definite Promise Sufficient To Support Contract Liability

As support for her alleged contract based on the Compliance Guide, Plaintiff relies on three sentences plucked from pages 4, 5 and 7 of the Compliance Guide. (Pl. Dep., pp. 150-52.) Even in the absence of the express disclaimer contained in the Compliance Guide, these statements of fairness and integrity cannot, as a matter of law, support contractual liability because they merely aspirational statements of policy and not a contractual term or definite promise.

Courts which have considered similar aspirational statements have held that they are insufficient, as a matter of law, to support the formation of a contract. In <u>Esposito v. Connecticut Coll.</u>, No. X04CV 970117504S, 2000 Conn. Super. LEXIS 2305 (Conn. Super. Ct. Sept. 1, 2000) (Shea Aff., Ex. 13), the plaintiff claimed that oral statements and written provisions in the defendant's employee handbook promising "fair and equitable working conditions" constituted an express contract obligating the college to treat him fairly and equitably. The plaintiff claimed that the college breached this alleged agreement when it demoted and ultimately discharged him. The court granted summary judgment in favor of the college, stating:

> The court finds as a matter of law that general statements made orally and in writing concerning fair and equitable working conditions and treatment of

30

employees do not rise to the level of an express contract, particularly in light
of the explicit contract disclaimers contained in the handbook.  The
statements in the Employee Handbook concerning at will employment and
the absence of contract formation are sufficient disclaimers to preclude a
valid claim for an express contract between the parties.

Id. at *7-*8 (emphasis added).

In the present case, the fairness and integrity provisions of the Compliance Guide are

statements of aspiration and of general future intent which do not contain any of the essential

elements or terms of a contract.  For instance, the Compliance Guide does not define fairness or

integrity, it does not address how employees will be treated with fairness and integrity or under what

circumstances an employee will be deemed not to have been treated with fairness and integrity.

Fairness and integrity are subjective concepts which, as a matter of law, lack the requisite

definiteness and certainty to form the basis of contractual liability.  Indeed, Plaintiff even admitted

that while she did not know what discipline was issued to Mr. Derouin, she nonetheless believed that

she was not treated fairly by the company.  (Pl. Dep. pp. 170-71.)

Plaintiff's claim must be rejected because, as in Esposito, the language of the

Compliance Guide on which she relies "does not rise to the level of an express contract, particularly

in light of the explicit contract disclaimers contained in the handbook." Esposito, 2000 Conn. Super

LEXIS 2305, at *7-8.  As set forth above, the Compliance Guide specifically provided:

The Company is an at-will employer, which means that both employees and
the Company are free at any time to end the employment relationship without
notice or cause.  **Neither this guide nor any other policies, practices or
benefits of the Company create an express or implied employment
contract between the employer and the Company.**

(Shea Aff., Ex. 3; emphasis in original.)  The fairness and integrity provisions of Mass Mutual's

Compliance Guide are not sufficiently definite to manifest a present intention to undertake

31

immediate contractual obligations; therefore, Plaintiff's claims for breach of contract and breach of implied contract based on the Compliance Guide must fail.

D.     There Is No Evidence That Mass Mutual Breached The Alleged Contract

Although the Online Guide and the Compliance Guide did not give rise to an employment contract, summary judgment is also appropriate because Mass Mutual did not breach the terms of the alleged contract. Plaintiff was terminated after she admitted to reading and discussing Mr. Backus' PMP in violation of Mass Mutual's Privacy and Confidential Information policy.

During the course of his investigation, Mr. Allen interviewed ten employees who reported to Mr. Paige, including Ms. Bates, Mr. Taylor, Mr. Derouin, Plaintiff, Ms. Curtis, Damali Williams, Irene Sparks, Chris Bolduc and Sandy Varney, about the events of November 29, 2001. (Allen Dep., pp. 51-53.) Mr. Allen interviewed Plaintiff on December 3, 2001. (Allen Dep., pp. 64-65; Pl. Dep., p. 113.) During his interview of Plaintiff, she "admitted reviewing the PMP and participating in something that she shouldn't have done." (Allen Dep., pp. 66, 72.) Plaintiff knew that an employee's PMP was a confidential document. (Pl. Dep., p. 109; Craig Aff., ¶ 10.)

After several meetings with Ms. Craig and Mass Mutual's in-house counsel, Mr. Allen made the decision to terminate Plaintiff, Mr. Taylor and Ms. Curtis for violations of Mass Mutual's confidentiality policy. Mr. Allen discharged Plaintiff because she "violated the privacy of Rick Backus by participating in the reading and passing around of his PMP." (Allen Dep., p. 90.) Mr. Allen's decision was based on Plaintiff's violations of the Privacy and Confidential Information policy in the Compliance Guide. (Allen Dep., 97-99; Craig Dep., pp. 43, 56.)

In advising Mr. Allen, Ms. Craig reviewed the Privacy and Confidential Information policy and considered that Plaintiff had "admitted to violating the company's compliance guide

32

policies with regard to confidential information." (Craig Dep., pp. 54-56, 57-58.) Plaintiff violated

the Privacy and Confidential Information policy because she "had acquired an individual's personnel

evaluation form and had commented on it and passed it to other employees." (Craig Dep., p. 56.)

As Ms. Craig testified, employees who come into contact with confidential information "are required

to maintain that confidentiality." (Craig Dep., p. 43.)

      1.    Plaintiff's Termination Was Consistent With Mass Mutual's Progressive Discipline Policy

Plaintiff's breach of contract and breach of implied contract claims fail because her

discharge was consistent with Mass Mutual's Progressive Discipline policy. As set forth above,

Plaintiff admitted to the misconduct which led to her termination and knew that an employee's PMP

was a confidential document. The decision to discharge Plaintiff was made consistent with the

relevant policy documents and after careful consideration by Mr. Allen who also terminated two

other employees, Mr. Taylor and Ms. Curtis, for their violations of Mr. Backus' privacy.

The Progressive Discipline policy states that progressive discipline "may be" applied

under appropriate circumstances. (Craig Aff., Ex. 3.) Under the circumstances of this matter, Mr.

Allen, after consulting with Ms. Craig and in-house counsel, determined that termination was the

appropriate disciplinary action and that a lesser penalty was not warranted. Additionally, the

Employee Responsibilities policy of the Online Guide expressly states that violations of the

Compliance Guide may result in disciplinary action up to and including termination. (Craig Aff., Ex.

4.)

Thus, termination was an appropriate penalty under the terms of the Online Guide for

Plaintiff's violations of Mr. Backus' privacy. Indeed, Plaintiff admitted that progressive discipline

was not always required when she testified, "I was aware that violations of the company's policies

33

could result in termination after progressive discipline, <u>or if you were very bad, which is a subjective concept, apparently.</u>" (Pl. Dep., p. 156.) Plaintiff also agreed that Mr. Allen had concluded that she had been "very bad." (Pl. Dep., pp. 156-57.)

   2.   <u>Plaintiff's Termination Was Consistent With The Terms Of The Compliance Guide</u>

Plaintiff's termination of employment was also consistent with the terms of the Compliance Guide. The Compliance Guide states, in pertinent part, "<u>As a condition of their employment,</u> MassMutual employees are required to protect and maintain the confidentiality of . . . records and information. . . . Employees with access to private, confidential and proprietary information are required to protect its confidentiality and use it solely for the purposes of performing their job responsibilities." (Shea Aff., Ex. 3, p. 15; emphasis added.) The Compliance Guide further states, in part, "[v]iolations of the Company's privacy and confidential records and information policies and guidelines may result in termination of employment . . . . The privacy and dignity of individual employees is to be respected at all times. . . . <u>Extreme care</u> must be exercised whenever communicating or sharing personal information . . . ." (Shea Aff., Ex. 3, p. 17; emphasis added.) Plaintiff knew that an employee's PMP was a confidential document covered by the Compliance Guide. (Pl. Dep. p. 109.) This is confirmed by Ms. Craig. (Craig Aff., ¶ 10.) Clearly, based on the plain language of the Compliance Guide, violations of employee privacy are serious matters and termination of employment is warranted under the company's Privacy and Confidential Information policy.

Nor can Plaintiff prevail on her claim that Mass Mutual violated the fairness and integrity provisions of the Compliance Guide because she was terminated and Mr. Derouin was not. (Pl. Dep., pp. 150-52, 170-72; Complaint, First Count, ¶ 43.) Mr. Allen issued Mr. Derouin a written

34

warning for his conduct in reviewing Mr. Backus' PMP on November 29, 2001. (Allen Dep., pp. 75-76; 104-05; Craig Dep., p. 70.) Mr. Derouin's written warning also negatively affected his bonus and compensation level that year. (Allen Dep., pp. 106, 109-110.)

Mr. Derouin was not terminated because Mr. Allen concluded that he had only glanced at the PMP very briefly and that his conduct was not as severe as that of Plaintiff, Mr. Taylor and Ms. Curtis. (Allen Dep., pp. 75-76.) As Ms. Craig testified, "Plaintiff's actions were significantly more severe and against the Compliance Guide and policies in place." (Craig Dep., p. 71.) As compared to Mr. Derouin, Plaintiff's "involvement was more significant and therefore warranted more severe action." (Craig Dep., p. 85.) "The difference was that Ms. Foster came upon [the PMP], read it and then passed it around and commented on it intentionally. Fran was at his desk when he was given this information, and he then gave it right back." (Craig Dep., p. 62.) Based on the foregoing, Plaintiff cannot show that Mass Mutual violated a contract formed by the Compliance Guide because she was discharged and Mr. Derouin received a written warning.

## IV. CONCLUSION

For the foregoing reasons, Mass Mutual's Motion for Summary Judgment should be granted.

THE DEFENDANT,
MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY

By: _____
Margaret J. Strange (ct08212)
James F. Shea (ct16750)
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT  06105
(860) 522-0404

35

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent by hand delivery this 16th day

of October 2003, to the following counsel of record:


                        Angelo Cicchiello
                        Law Offices of Angelo Cicchiello
                        364 Franklin Avenue
                        Hartford, CT 06114


                                      James F. Shea

H:\Client Folder\M\Mass Mutual\Foster\Pld\MSJ\Motion for Summary Judgment.doc
47003

36