UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

FILED

Dec 30  10 07 AM '03

U.S. DISTRICT COURT
NEW HAVEN, CONN

JESSICA FOSTER,
Plaintiff,

V.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,
Defendant.

Civil No.: 302 CV1433 PCD

December 24, 2003

## PLAINTIFF'S OBJECTION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Plaintiff, Jessica Foster, respectfully objects to Defendant Massachusetts Mutual Life Insurance Company's Motion for Summary Judgment. In further support of this motion, the Plaintiff submits the attached Memorandum of Law.

PLAINTIFF,
JESSICA FOSTER

BY: _____
Angelo Cicchiello, Esq.
Law Offices of Angelo Cicchiello
364 Franklin Avenue
Hartford, CT 06114
(860) 296-3457
Federal Bar No. CT 06503

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

FILED

Dec 30  10 09 AM '03

U.S. DISTRICT COURT
NEW HAVEN, CONN.

JESSICA FOSTER,
    Plaintiff,

V.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,
    Defendant.

Civil No.: 302 CV1433 PCD

December 24, 2003

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF OBJECTION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

The Plaintiff, Jessica Foster ("Plaintiff") has initiated a Two Count complaint against Defendant Massachusetts Mutual Life Insurance Company ("Mass Mutual"), for breach of express and implied contract. Said breaches of contract are a result of the termination of the Plaintiff's employment by Mass Mutual on December 10, 2001. Mass Mutual has moved for summary judgment on the First and Second Counts of said complaint.

**II.   FACTUAL BACKGROUND**

The Plaintiff was employed with the Defendant Mass Mutual from March 2000 through December 10, 2001. (Complaint, Paragraph 4) At the time the Plaintiff was hired, she was informed that the company had a policy manual which she could access on the Internet entitled "People Practices Online Guide for Employees ("Online Guide"). (Complaint, Paragraph 35). She was informed that the Policy Manual would govern the terms and conditions or her employment.  (Complaint, Paragraph 36). The Plaintiff was also aware of the Corporate

Compliance Guide which also was to govern the terms and conditions of her employment. (Transcript of Plaintiff's Deposition, pg. 58-59, attached hereto as "Exhibit 1") Ms. Foster accepted the manual and the position with Mass Mutual and relied upon the terms of the Policy Manual throughout her employment. (Complaint, Paragraph 37).

The Online Manual sets forth the overview of various key-human resource policies and plans for their employees, including language that the company would follow a progressive discipline with respect to attendance, work performance, or behavior for employees with more than three months service. Specifically, the manual states:

> "Whereever possible, employees with more than three months of service will be given the opportunity to correct such problems. Management counseling often solves the problems, but if this is ineffective, in most cases, Corporate Human Resources may be contacted and the employee may be issued a warning, placed on probation, or suspended without pay for a period of time. Typically, a written statement of the problems and steps needed to correct will given to the employee by the employee's manager. A copy of the statement will be retained with the employee's employment records. If the problem is not corrected, further discipline action up to and including termination can occur." (People Practices Online Guide for Employees – Progressive Discipline, hereinafter referred to as "Online Manual" attached as "Exhibit 2").

By virtue of the Online Manual, and the express provisions contained therein, the Defendant Mass Mutual promised the Plaintiff that she would not be fired abruptly without being subject to progressive discipline, nor without just cause.

On November 29, 2001, department lead person/supervisor Jennifer Bates invited Plaintiff to assist her to clean out a cubicle that had been occupied by Richard Backus, a co-worker who had been laid off. (Complaint, Paragraph 15). Plaintiff was instructed by Ms. Bates to discard papers in Mr. Backus' cubicle that were considered garbage. (Complaint, Paragraph 16). Plaintiff was also joined by Russ Taylor, another employee of the same unit, who assisted Ms. Bates and the Plaintiff to sort out the material that was to be discarded and what should be retained. (Complaint, Paragraph 17). Mr. Taylor found a Performance Management Process (PMP)

evaluation of the laid-off employee, Richard Backus, which contained written comments by the manager as well as Mr. Backus. (Complaint, Paragraph 18).

Shortly thereafter, Plaintiff returned back to her working area at her desk when another employee, Betsy Curtis, approached Plaintiff's work area inviting the Plaintiff to read Mr. Backus' performance appraisal. (Exhibit 1, pg. 103). Plaintiff quickly reviewed the manager's comments on the performance appraisal and immediately discarded same in the waste basket. Plaintiff held minor conversations with Ms. Bates regarding the subject performance appraisal. Plaintiff expressed to Ms. Bates how she felt regarding Mr. Backus' appraisal. (Complaint, Paragraph 21). The Plaintiff did not give the PMP evaluation to any other person. (Complaint, Paragraph 23).

On December 3, 2001, Tim Allen, Second Vice President Mass Mutual, interviewed the Plaintiff alleging that the Plaintiff had reviewed a laid-off employee's PMP evaluation. Plaintiff informed Mr. Allen that she reviewed the subject PMP evaluation and discarded same immediately as said performance appraisal was among papers to be discarded. (Complaint, Paragraph 26). Plaintiff did not discuss the PMP evaluation with anyone except a brief discussion with Ms. Bates as to how Plaintiff felt regarding Mr. Backus' PMP. (Complaint, Paragraph 26). On the afternoon of December 6, 2001, the Plaintiff was suspended with pay pending further investigation. (Complaint, Paragraph 27). On December 10, 2001, while Plaintiff was at home, she received a telephone call at which time she was informed that Mass Mutual had terminated her. (Exhibit 1, pg. 124). Subsequently, Mr. Allen confirmed the Plaintiff's termination with a letter dated December 10, 2001. (Attached hereto as "Exhibit 3"). The Plaintiff was terminated for violation of company compliance rules relative to Mass Mutual's privacy policy. (Exhibit 3).

### III. ARGUMENT

#### A. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be granted if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." When the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to "make a showing sufficient to establish the existence of an element essential to [its] case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is deemed material if it might affect the outcome of the lawsuit. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In determining whether a material factual dispute exists, the court views the evidence through the prism of the controlling legal standard. Id.

#### B. Whether A Contract Existed Between The Plaintiff and Mass Mutual Is An Issue Of Fact, Not A Question Of Law.

A breach of an express or implied contract claim requires the plaintiff to prove by a preponderance of the evidence that: (1) the employer made representations, either by words or actions, to undertake some form of actual contract commitment under which plaintiff could not be terminated without just cause; Coelho v. Posi-Seal International, Inc., 208 Conn. 106 (1988) and (2) the plaintiff was aware of these representations and either accepted employment based on them, or relied on them during the course of employment. Barry v. Posi-Seal International, Inc., 36 Conn. App. 1 (1994); Johnson v. Carpenter Technology, 723 F. Supp. 180 (D. Conn. 1989).

Statements contained within an employer's personnel manual as well as the words and acts of the parties "is essential to determine whether a contract was entered into and what its terms were...." . Finley v. Aetna Life & Casualty Co., 202 Conn. 190, 199 (1987) *quoting*

Hydro-Hercules Corporation v. Gary Excavating, Inc., 166 Conn. 647, 652, (1974). The determination of what the parties intended to include within the contract is a question of fact. Id. Moreover, a contract between employer and employee arises whenever the employer establishes personnel policies or practices and makes them known to its employees. Manley v. Blue Cross/Blue Shield of Connecticut, 96-CBAR-1132, at 3 of 12 (Corradino, J., Sept, 10, 1996) (Attached hereto as "Exhibit 4").

"All employer-employee relationships not governed by express contracts involve some type of implied 'contract' of employment. There cannot be any serious dispute that there is a bargain of some kind; otherwise, the employee would not be working." Gaudio v. Griffin Health Services Corp., 249 Conn. 523, 532 (1999). The minimum threshold for the creation of a contract between employer and employee requires that the employer produce an environment whereby the employee believes that the employer's policies and practices are established and official. Finley, supra, at 199.

The handbook can give rise to contractual rights without evidence that the parties mutually agreed to the statements in the manual. See Manley, supra, at 3. The creation of the policy manual enhances the employment relationship and the "employer secures an orderly, cooperative and loyal work force, and the employee . . . job security and the conviction that he will be treated fairly." Id.

In the present case, Mass Mutual has not only a written Corporate Compliance Guide, but also a People Practices Online Guide for Employees. Mass Mutual requires that employees annually acknowledge receipt and acceptance of the Compliance Guide, and have them electronically agree to the terms contained within the guide. (Affidavit of Karen Craig, Paragraph 9, attached hereto as "Exhibit 5"). Mass Mutual stated in it's letter to the Plaintiff

that Ms. Foster was terminated for "violation of the company compliance policy rules relative to Mass Mutual's Privacy Policy." (Exhibit 3).

Mass Mutual argues that it never expressed an intention to be bound to the policies and procedures set forth in the Online Manual, as it is not a contract and that the disclaimers it issued thereby precludes any reasonable expectations of contractual liability. However, the Plaintiff's termination was based upon a violation of company policy as dictated by this same Manual. The effectiveness of a disclaimer is based on its placement in the handbook, the language and type of print used, whether its referenced in the table of contents, whether oral representations contradict the disclaimer. See, e.g., Harrop v. Allied Printing Services, Inc., No. CV 98 0583561, 00-CBAR-0216 (26 Conn. L. Rptr. 703) (Conn. Super. Ct. Mar. 24, 2000)(courts have been reluctant to dismiss a claim where the employer has disseminated conflicting or contradictory information regarding handbook) (Attached hereto as "Exhibit 6"); Wasilewski v. Warner-Lambert Co., No. CV 93 04 44 45, 95-CBAR-0488 (Conn. Super. Ct. June 19, 1995)(disclaimer untitled, on last page, and lacking in specific language insufficient to warrant summary judgment)(Attached hereto as "Exhibit 7"); Dicker v. Middlesex Memorial Hospital, No. 0065434S, 94-CBAR-1042 (Conn. Super. Ct. March 25, 1994)(disclaimer untitled, unsigned by plaintiff, and in fine print precludes summary judgment)(Attached hereto as "Exhibit 8"). Whether the disclaimer as written in the case at bar was specific enough to be enforceable is an issue of fact. Anderson, supra.

In Manley, the Court noted that failure to include language "explicitly stat[ing] that the company can still terminate at will and for good measure. . . . creates confusion for workers. . . ." Manley, supra, at 6. The disclaimer language in the instant case does not unequivocally state the purpose of the disclaimer, and, like the language in Manley, does not preclude a

finding of contractual liability. Id. ("Use of what the Court respectfully suggests is cat and mouse language will not permit this issue to be resolved as a question of law").

Similarly the language used by Mass Mutual under the title of Progressive Discipline states that the employees with more than three months' service <u>WILL</u> be given the opportunity to correct such problems. (Exhibit 2) (Emphasis added). The progressive discipline promise directly contradicts its vague contractual statement Mass Mutual claims is the disclaimer of a contract formation. In addition, Mass Mutual's disclaimer, "[T]his Guide does not create a contract of employment", appears at the bottom of the computer screen in fine print. The conflicting statements and the employer's representations to the Plaintiff at the time of her hiring and again prior to the company layoff, definitely create a factual issue as to the parties intent to be bound by the Online Manual. See Manley, supra, at 6 (where employer states in manual "we intend to follow these policies" and that they "reserve the right to change these policies, disclaimer is ineffective since it uses "cat and mouse language"). Similarly, Mass Mutual's Corporate Compliance Guide contains a clause reserving the right to amend it's policies[1]. Furthermore, as stated above, the Plaintiff's termination was based upon a violation of this same Online Manual. Again, as this issue is an issue of fact not an issue of law, Mass Mutual's motion for summary judgment must fail.

C.   **Whether The Termination of the Plaintiff was Inconsistent With the Mass Mutual's Corporate Compliance Guide and Online Guide Is A Question of Fact.**

The termination of the Plaintiff by Mass Mutual was inconsistent with the Corporate Compliance Guide as well as the Online Guide. In terminating the Plaintiff, Mass Mutual stated the Plaintiff was terminated for violation of company compliance rules relative to Mass

Mutual's privacy policy. (Exhibit 3). Mass Mutual's guide which they relied on to terminate the Plaintiff outlines a progressive discipline policy with respect to attendance, work performance, or behavior for employees with more than three months service. Specifically, the manual states:

> "Wherever possible, employees with more than three months of service will be given the opportunity to correct such problems. Management counseling often solves the problems, but if this is ineffective, in most cases, Corporate Human Resources may be contacted and the employee may be issued a warning, placed on probation, or suspended without pay for a period of time. Typically, a written statement of the problems and steps needed to correct will given to the employee by the employee's manager. A copy of the statement will be retained with the employee's employment records. If the problem is not corrected, further discipline action up to and including termination can occur." (Exhibit 2).

1. <u>Mass Mutual failed to follow established guidelines regarding employee discipline.</u>

On November 29, 2001, the Plaintiff was assisting department lead person/supervisor Jennifer Bates in cleaning out a cubicle that had been occupied by Richard Backus. During the course of cleaning this desk, another employee, Russ Taylor, began to assist Ms. Bates and the Plaintiff sort out materials which were to be discarded and materials that were to be retained. (Complaint, Paragraph 17). It was Mr. Taylor who pulled Mr. Backus' PMP out of the garbage and began to comment about it. (Exhibit 1, pg. 101). When Mr. Taylor found the PMP, Ms. Bates did not say anything. (Exhibit 1, pg. 103). Furthermore, when Mr. Taylor walked away with the PMP, Ms. Bates again did not say anything (Transcript of Jennifer Bates's Deposition, pg. 63, attached hereto as "Exhibit 10")

Ms. Bates was the team leader and in a position of authority (Exhibit 10, pg. 15). Despite this authority, she allowed Mr. Taylor to walk away with Mr. Backus' PMP. Ms. Bates did not say anything to the Plaintiff or Mr. Taylor upon finding this document. Furthermore, Ms. Bates did not inform the Plaintiff that she had violated company policy by reading the PMP. (Exhibit 10, pg.

---

[1] In the Disclaimer section of the Corporate Compliance Guide, appears the phrase: "The Company reserves the right to amend, modify, change, suspend, or cancel all or any part of the policies, practices, services, benefits, or other portions of this guide at ant time, or from time to time, with or without notice." (Attached hereto as "Exhibit 9")

87). As a result of reading Mr. Backus' PMP, the Plaintiff was placed on suspension pending further investigation. (Exhibit 1, pg. 119). Without having brought her in to talk to her, Mass Mutual terminated the Plaintiff four days later. (Exhibit 1, pg. 124). Despite Ms. Bates' actions (or inaction) on November 29, 2001, the Plaintiff was terminated but Ms. Bates is still employed by Mass Mutual (Exhibit 10, pg. 9).

The Plaintiff was not the only employee to read Mr. Backus' PMP evaluation. Fran Derouin, Betsy Curtis, and Russ Taylor all read the PMP. (Exhibit 1, pg. 107-108). As a result of this incident, the Plaintiff, Mr. Taylor, and Ms. Curtis were terminated. (Exhibit 1, pg. 125). However, Mr. Taylor and Ms. Curtis wee involved in another incident, wherein those two individuals went into a terminated employee's office, Dick Paige, and looked at files and looked through drawers. (Deposition of Timothy Allen, pg. 73 Attached hereto as "Exhibit 11") . The Plaintiff was not a part of looking through files in Mr. Paige's office. (Exhibit 1, pg. 108).

The only two employees involved in this incident who only looked at the PMP were the Plaintiff and Mr. Derouin. The Plaintiff was suspended and subsequently terminated while Mr. Derouin was given only a warning and was not suspended, (Exhibit 1, pg. 122). Likewise. Ms. Bates was not terminated for her actions. Clearly, Mass Mutual did not treat all the employees involved in this incident equally. Mass Mutual fired the Plaintiff for reviewing the PMP but only gave Mr. Derouin a warning for the same behavior. Furthermore, the termination of the Plaintiff violated the Online Guide as she was not given an opportunity to correct the situation. As the Online Guide that Mass Mutual relied on to terminate the Plaintiff states that the Plaintiff would be afforded an opportunity to address such a problem, but was not given the opportunity to do so, Mass Mutual terminated the Plaintiff in violation of it's own policy.

2.  Whether Richard Backus' PMP Was A Confidential Document Is A Question of Fact.

Mass Mutual has stated that they terminated the Plaintiff for "violation of the company compliance policy rules relative to Mass Mutual's Privacy Policy." (Exhibit 3). However, Mr. Backus himself had asked the Plaintiff to help him fill out his PMP prior to November 29, 2001. (Exhibit 1, pg. 102). When the Plaintiff and Ms. Bates cleaned out Mr. Backus' cubicle, Ms. Bates pulled a garbage can over to the cubicle to dispose of "paper that was not needed" (Exhibit 10, pg. 53). Among those papers was Mr. Backus' PMP report. Ms. Bates did not instruct the Plaintiff to place certain documents in a special folder. (Exhibit 10, pg. 55). If the PMP report was as confidential as Mass Mutual claims, Ms. Bates, a person of authority, should have directed Mr. Taylor to dispose of the document immediately once it was found[2]. Instead, not only did she allow him to read the document, but allowed him to walk off with document. Therefore, given the fact that Mr. Backus had shown the Plaintiff his PMP before, the Plaintiff was given no instruction as to how to dispose of confidential documents, as well as the fact that Ms. Bates allowed the PMP to be taken from the garbage and passed around the office, there is a genuine issue as to whether Mr. Backus' PMP report could be considered a confidential document. The stated reason for the Plaintiff's dismissal was for violating Mass Mutual's privacy policy by reading Mr. Backus' PMP report. There is an issue of fact as to whether Mass Mutual's treatment of Mr. Backus' PMP report makes it a confidential document. Such a question of fact should be decided by the trier of fact.

---

[2] The bin that the PMP was placed in was a huge garbage bin (Exhibit 10, pg. 60). Had the PMP been a confidential document, it should have been shredded as directed on page 18 of the Corporate Compliance Guide. (Exhibit 9).

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Jessica Foster respectfully requests that the Court deny defendant Massachusetts Mutual Life Insurance Company's Motion for Summary Judgment.

```
                              PLAINTIFF
                              JESSICA FOSTER


                          By: _____
                              Angelo Cicchiello, Esq.
                              Law Offices of Angelo Cicchiello
                              364 Franklin Avenue
                              Hartford, CT 06114
                              (860) 296-3457
                              Federal Bar No. CT 06503
```

## CERTIFICATION

This is to certify that on this 24th day of December, 2003, the foregoing was mailed, postage prepaid, to:

James F. Shea, Esq.
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT 06105

```
                              _____
                              Angelo Cicchiello, Esq.
```

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

JESSICA FOSTER,
   Plaintiff,

V.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,
   Defendant.

Civil No.: 302 CV1433 PCD

December 24, 2003

## PLAINTIFF'S LOCAL RULE 56(a)(2) STATEMENT

Pursuant to Local Rule 56(a)(2) of this Court, Plaintiff Jessica Foster ("Plaintiff") respectfully submits the following response to Defendant Mass Mutual's Local Rule 56(a)(1) Statement as to material facts as to which there is no genuine issue to be tried:

1. Admitted.

2.    Admitted,

3.    Admitted.

4.    Admitted.

5.    Admitted.

6.    Admitted.

7.    Admitted.

8.    Admitted.

9.    Admitted.

10.    Admitted.

11.    Admitted.

12.    Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Denied. The Plaintiff was aware of Mass Mutual's policy of treating all employees equally prior to her termination. (Exhibit 1, Pg. 160).

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted.

40. Admitted.

41. Admitted.

42. Admitted.

43. Admitted.

44. Admitted.

45. Admitted.

46. Admitted.

47. Admitted.

48. Admitted.

49. Denied. The Plaintiff did not pass the PMP to other employees in violation of the Privacy and Confidentiality Information policy. (Exhibit 1, pg. 104).

50. Admitted.

### Disputed Issues of Material Fact

1. It is disputed between the parties as to whether an express contract existed between the Plaintiff and Mass Mutual based on the Online Manual and/or the Corporate Compliance Guide.

2. It is disputed between the parties as to whether an implied contract existed between the Plaintiff and Mass Mutual based on the Online Guide and/or the Corporate Compliance Guide.

3. It is disputed between the parties as to whether the disclaimer language in the Online Guide and/or Corporate Compliance Guide is enforceable.

4. It is disputed between the parties whether the Plaintiff's termination was inconsistent with policies contained within the Online Guide and/or Corporate Compliance Guide.

PLAINTIFF
JESSICA FOSTER

By: _____
Angelo Cicchiello, Esq.
Law Offices of Angelo Cicchiello
364 Franklin Avenue
Hartford, CT 06114
(860) 296-3457
Federal Bar No. CT 06503

## CERTIFICATION

This is to certify that on this 24th day of December, 2003, the foregoing was mailed, postage prepaid, to:

James F. Shea, Esq.
Jackson Lewis LLP
55 Farmington Avenue, Suite 1200
Hartford, CT 06105

_____
Angelo Cicchiello, Esq.