# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JESSICA FOSTER, | : | |
| Plaintiff, | : | |
| | : | Civ. No. 3:02CV1433(PCD) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MASSACHUSETTS MUTUAL LIFE | : | |
| INSURANCE COMPANY | : | |
| Defendant. | : | |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P. 56(c), Defendant Massachusetts Mutual Life Insurance

Company ("Mass Mutual") moves for summary judgment.  For the reasons discussed herein, the

motion is **granted**.

## I.    BACKGROUND[1]

From March 2000 until December 10, 2001, Plaintiff Jessica Foster worked for

Defendant as a Senior Systems Analyst.  At the time Plaintiff completed her employment

application, she was informed of Defendant's Peoples Practices Online Guide for Employees[2]

("Online Guide").   Additionally, Plaintiff was notified of Defendant's Corporate Compliance

Guide[3] ("Compliance Guide"), also available over the Internet.  Plaintiff was informed that these

---

[1]    Facts are taken from the parties' Local Rule 56(a) statements and are undisputed unless stated otherwise.

[2]    The Online Guide was an online human resources manual available to all employees which contained various Mass Mutual personnel policies.  Def.'s Local Rule 56(a) Statement at 3.

[3]    Each year, Mass Mutual requires employees to electronically confirm their receipt and acceptance of the terms of the Compliance Guide.  Plaintiff electronically confirmed her receipt and acceptance of the terms on October 15, 2001.  Def.'s Local Rule 56(a) Statement at 5.

1

manuals would govern the terms and conditions of her employment.  Furthermore, when

Plaintiff was hired, she was also made aware that her employment with Mass Mutual was at-will

and that Defendant was entitled to terminate the employment relationship at any time for any

reason.  On March 15, 2000 Defendant confirmed in writing that Plaintiff had been offered and

had accepted a position with Mass Mutual.  Plaintiff commenced employment at Mass Mutual

on March 26, 2000.

On November 29, 2001, Jennifer Bates, Plaintiff's team leader and supervisor, asked

Plaintiff to assist her in cleaning out the cubicle of Richard Backus, a recently discharged

employee.[4]  Plaintiff and Ms. Bates were assisted by Russ Taylor, another employee.  Mr. Taylor

came across Mr. Backus's Performance Management Process ("PMP"), a written performance

review of Mr. Backus.[5]  The PMP is a confidential document that included his supervisor's

written comments regarding his job performance.  Mr. Taylor and Plaintiff discussed Mr.

Backus's PMP.  Mr. Taylor walked away with the PMP and Plaintiff resumed assisting Ms.

Bates.

After Plaintiff returned to her desk she was approached by fellow employee Betsy Curtis,

who had Mr. Backus's PMP and invited Plaintiff to read it.  Upon reviewing the PMP, Plaintiff

returned to Mr. Backus's cubicle, discarded the evaluation in the garbage, and proceeded to

discuss the PMP and her opinion as to why Mr. Backus was terminated with Ms. Bates.  During

the remainder of that day and the next day, Plaintiff discussed the PMP with Mr. Taylor and Ms.

---

[4]    On November 28, 2001, Mass Mutual announced a reduction in force ("RIF").  As a result of the
RIF, Mr. Backus, as well as Mr. Paige, another member of Plaintiff's team, were laid off.  Plaintiff
was not selected for the RIF.  Def.'s Local Rule 56(a) Statement at 7.

[5]    There is some confusion regarding whether Plaintiff reviewed Mr. Backus's PMP or the PMP of
another terminated employee, Mr. Paige.  For the purposes of this ruling, however, this
discrepancy is irrelevant.

Curtis.[6]

On December 3, 2001, Tim Allen interviewed Plaintiff regarding her involvement in the misbehavior that had occurred on November 29, 2001.  Specifically, Mr. Allen attempted to ascertain whether Plaintiff had reviewed Mr. Backus's confidential PMP.  Plaintiff admitted "reviewing the PMP and participating in something that she shouldn't have done."  On December 6, 2001, Mr. Allen concluded his investigation and determined that "certain people had participated in a breach of privacy of some private documents."  On that same day, Plaintiff was suspended, pending further investigation, for violating Defendant's confidentiality policy.[7] On December 10, 2001, Plaintiff was notified that her employment with Mass Mutual had been

---

[6]     Additionally, Ms. Bates overheard Plaintiff and Mr. Taylor discussing the fact that other PMPs were stored in the office of Mr. Paige, another recently discharged employee.  Ms. Bates then proceeded to go to Mr. Paige's office where she discovered Plaintiff, Mr. Taylor, and Fran Derouin, another employee, leaving Mr. Paige's office.  Ms. Bates was informed by Mr. Derouin that they did not find anything in Mr. Paige's office.  Def.'s Local Rule 56(a) Statement at 8.

[7]      The Company's "Privacy and Confidential Information" provision was located in Mass Mutual's Compliance Guide and states:

        During the course of their employment, Mass Mutual employees may be supplied with or have access to records and information that are private [and] confidential ... As a condition of their employment, Mass Mutual employees are required to protect and maintain the confidentiality of such records and information ... Employees with access to private, confidential and proprietary information are required to protect its confidentiality and use it solely for the purposes of performing their job responsibilities.

Def.'s Local Rule 56(a) Statement at 6.

The policy further states, in part, "Company confidential records and information may be verbal, electronic or otherwise computer based and include such categories as ... [p]ersonal information regarding ... employees."  Employees are informed that [v]iolations of the Company's privacy and confidential records and information policies and guidelines may result in termination of employment ... ."  Further, the Compliance Guide states, "The privacy and dignity of individual employees is to be respected at all times ... Extreme care must be exercised whenever communicating or sharing personal information ... ."

*Id.*

3

terminated.[8]  The basis for her termination was violation of company policies pertaining to private and confidential information.

## II.    DISCUSSION

Plaintiff alleges that (1) Defendant breached its employment agreement with her by summarily terminating her, and (2) Defendant breached an implied contract that she would not be terminated without just cause and without progressive discipline.  Defendant argues that because both the Online Guide and the Compliance Guide contain clear and prominent contract disclaimers, neither document established a contract with Plaintiff.  Consequently, because there are no genuine issues of material fact, Defendant maintains that it is entitled to judgment as a matter of law.

### A.    Standard of Review

A party seeking summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue of for trial.'" *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Quinn v. Syracuse Model Neighborhood*

---

[8]     Besides Plaintiff, Mr. Taylor and Ms. Curtis were also terminated for their violations of Mass Mutual's confidentiality policy.  Mr. Derouin was issued a written warning for his conduct.  Def.'s Local Rule 56(a) Statement at 10-11.

4

*Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Summary judgment is proper when reasonable minds could not differ as to the import of the evidence. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). "Conclusory allegations will not suffice to create a genuine issue." *Delaware & H.R. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990). Determinations as to the weight to accord evidence or credibility assessments of witnesses are improper on a motion for summary judgments as such are within the sole province of the jury. *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

### B.      Breach of Express Contract (Count One)

Plaintiff contends that at the time she was hired, she was notified of both Mass Mutual's Online Guide and Compliance Guide. Plaintiff alleges that she was informed that these policy manuals would govern the terms and conditions of her employment and that she accepted the manuals in connection with her position with Mass Mutual. Specifically, Plaintiff argues that she relied upon the progressive discipline policy, which spoke to employee attendance, work performance, and behavior, and which was enunciated in the Online Guide. Plaintiff maintains that by virtue of the Online Guide, and in particular the progressive discipline policy, Defendant promised Plaintiff she would not be fired without being subject to progressive discipline, or without just cause.

It is well established that under Connecticut law, contracts of permanent employment or for an indefinite term of employment are terminable at-will by the employer. *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 474, 427 A.2d 385 (1980). Under certain circumstances, however, statements in an employee handbook or an employer's personal manual can give rise to an express or implied contract between an employee and employer effectively modifying this presumption of at-will employment. *Finley v. Aetna Life & Cas. Co.*, 202 Conn. 190, 198, 520

5

A.2d 208 (1987).  Employers can, however, protect themselves against employee contract claims based upon statements in personnel manuals "[b]y eschewing language that could reasonably be construed as a basis for a contractual promise, or by including appropriate disclaimers of the intention to contract."  *Id*. at 199 n.5, 520 A.2d 208.   In the absence of definitive contract language, the determination of what the parties intended is generally treated as a question of fact to be decided by a jury.  *Id*. at 199, 520 A.2d 208.  Nevertheless, the mere existence of a personnel manual under which a contractual relationship is claimed does not automatically create a question of fact precluding summary judgment.  *Manning v. Cigna Corp.*, 807 F. Supp. 889, 893 (D. Conn. 1991).  Instead, in particular cases, whether an employee manual issued by the employer may be deemed to give rise to an enforceable contract is a question of law properly decided by the court.  *Id*.

Connecticut courts, state and federal, have consistently granted summary judgment in cases where the personnel manual at issue in a breach of contract claim contains an express disclaimer.[9]  For instance, in *Ross v. Davis*, 218 F. Supp. 2d 256 (D. Conn. 2002), the plaintiff, relying on an employee handbook, asserted that contractual promises were made by her employer regarding the process of termination.  *Id*. at 258-59.  The introduction section of the employee handbook contained an explicit disclaimer stating that it "is not and should not be considered an employment contract...[and] it is not intended to alter the at-will employment

---

[9]    For additional Connecticut state and federal court decisions granting summary judgment in cases where the personnel manual at issue contains an express disclaimer, see *Cowen v. Fed. Express Corp.*, 25 F. Supp. 2d 33, 31 (D. Conn. 1998) (granting summary judgment on breach of contract claim because employer, throughout the employee manual, disclaimed any intention to contract with its employees); *Manning v. Cigna Corp.*, 807 F. Supp. 889, 893 (D. Conn. 1991) (concluding that defendant's disclaimer stating that the manual was "not an employment contract" barred employee's breach of contract claims); *Lombardi v. Mktg. Corp., of Am.*, No. CV 91 0293281, 1994 WL 247956, at * 3 (Conn. Super. Ct. May 23, 1994) (finding that based on the disclaimer, the defendant insulated itself from any claims of contract based on the employee handbook).

relationship between [the employer] and any employee." *Id*. at 261.  In granting summary judgment on plaintiff's claim the court concluded that the disclaimer, located on the first page of the employee handbook, was "clear, express and sufficiently conspicuous" and should have been observable to the plaintiff in reviewing the manual. *Id.*  Similarly, in *Cardona v. Aetna Life & Cas. Co.*, No. 3:96 CV 1009, 1998 WL 246634 (D. Conn. May 8, 1998), the plaintiff, relying on a company handbook, alleged that contractual promises were made by Aetna regarding the way performance appraisals would be performed and the process for termination.  *Id.* at * 5.  On the second page of the handbook there was an explicit disclaimer stating that the handbook was "not intended to create, nor should you interpret it to be, a contract or agreement of any type between the company and you."  *Id.*  The Court granted summary judgment and concluded that:

> Although representations in an Employee Handbook may under certain circumstances give rise to an express or implied contract between and employer and employee, in this case the Employee Handbook contained an explicit disclaimer...The disclaimer in the Aetna handbook is clear and unequivocal.  It was located on the second page of the handbook, and although not labeled a 'disclaimer,' it was sufficiently obvious as to be readily observable to any employee reviewing the manual.  *Id.*

In the present case, Mass Mutual expressly disclaimed any intent to contract with its employees by stating in clear terms on the introductory page, as well as on every other page of the Online Guide:

> Disclaimer: This Guide does not create a contract of employment.  The Company reserves the right to amend, modify, change, suspend or cancel all or any part of the policies, practices, services, benefits or other portions of this Guide at any time, or from time to time, with or without notice.  Here is the full text of the disclaimer.

> Def.'s Local Rule 56(a) Statement at 3.

By clicking on the above underlined text or by utilizing a separate link on the left hand side of every page of the Online Guide, employees could access the full disclaimer, which stated:

> The Company reserves the right to amend, modify, change, suspend or cancel all or any

7

part of the policies, practices, services, benefits or other portions of this Guide at any time, or from time to time, with or without notice. This Guide...is intended only to provide general information and guidance relative to policies and benefits of the Company. The Company is an at-will employer, which means that both an Employee and the Company are free at any time to end the employment relationship without notice or cause. **Neither this Guide nor any other policies, practices or benefits of the Company create an express or implied employment contract between an Employee and the Company.**

*Id.* at 4 (emphasis in original).

Furthermore, Mass Mutual's Compliance Guide, an additional employee manual of which Plaintiff became aware when she was hired and the terms of which she agreed to less than two months prior to her termination, contained a similar disclaimer. The second page of the Compliance Guide was entitled "Disclaimer" and read:

The Company is an at-will employer, which means that both employees and the Company are free at any time to end the employment relationship without notice or cause. **Neither this guide nor any other policies, practices, or benefits of the Company create an express or implied employment contract between the employer and the Company.**

*Id.* at 5 (emphasis in original).

In *Cardona*, the Court concluded that the disclaimer was sufficiently conspicuous despite its placement on the second page of the handbook and its lack of a specific label separating it from the surrounding text. *Cardona*, 1998 WL 246634, at *16. Here, unlike *Cardona*, the disclaimer in the Online Guide was both specifically labeled "Disclaimer" and was located on the introductory page, and every subsequent page, of Mass Mutual's Online Guide. The disclaimer in the Compliance Guide, while located on the second page, was similarly entitled "Disclaimer." Plaintiff was also notified of her at-will employment status in a separate provision of the Online Guide entitled "Employee Responsibilities." This provision, in addition to providing a brief description of employee conduct warranting disciplinary action, also stated that

8

"Of course, all employment at Mass Mutual is at-will, which means that both you and the company are free at any time to end the employment relationship for any reason." Def.'s Local Rule 56(a) Statement at 5. Additionally, Plaintiff was made aware of Mass Mutual's at-will employment policy in her employment application. Directly above where Plaintiff signed and dated her employment application there was a statement, in bold type, reading:

> I also understand that employment with the Company is "at will" for no fixed period of time and may be terminated by me or the Company at any time for any reason not specifically prohibited by law, with or without cause, with or without reason. No oral representation to the contrary has been made to me, and I further understand that no employee or representative of the Company is authorized to make any such representation now or in the future. I further understand that the Company may change the terms and conditions of employment with the Company at any time for any reason.

Id. at 1-2.

Finally, the second page of Plaintiff's Offer Letter, confirming Plaintiff's offer, acceptance, and position at Mass Mutual also clearly stated: "All employment at Mass Mutual is at will, meaning that you and the Company are free at any time to end the employment relationship for any reason." Id. at 2.

In the present case, Mass Mutual's Application of Employment, Offer Letter, Online Guide, and Compliance Guide, all of which Plaintiff received and read at least in part, clearly indicate that plaintiff was an at-will employee.[10] Moreover, they contain clear, explicit, and conspicuous disclaimers of any intention to create enforceable contract rights. Any expectation which arose in Plaintiff's mind was not a contractual right but was always subject to the

---

[10] Despite signing her employment application, Plaintiff admitted that she did not read the first sentence of the paragraph above the signature line because she assumed "that the company would not put anything there that would be damaging to me, and I needed the job, so I signed, whatever it said I signed." Def.'s Mem. of Law in Supp. of Mot. for Summ. J. at 3. As for the disclaimer on the introductory page and every other page of the Online Guide, Plaintiff did not recall whether she had ever read the full disclaimer. Id. at 7. Plaintiff did concede, however, that based on the disclaimer provision she could "see that [Mass Mutual] did not intend [to create a contract of employment]." Id.

9

disclaimer and Defendant's right to terminate the employment.  As Plaintiff has failed to demonstrate a material factual dispute with respect to the existence of an express employment contract, Defendant is entitled to summary judgment on Plaintiff's breach of express contract claim.

### C.     Breach of Implied Contract (Count Two)

Plaintiff's second count is for breach of implied contract.  On its face, this claim appears to be duplicative of her claim for breach of express contract.  Plaintiff asserts that a contract between Plaintiff and Mass Mutual is implied from the progressive discipline policy in Mass Mutual's Online Manual.  Plaintiff argues that she "relied on this promise and was instructed to follow the provisions in order to ensure she would not be discharged."  Compl., ¶ 48.  In her Opposition Memorandum she vaguely and conclusorily claims that "the employer's representations to [her] at the time of her hiring and again prior to the company layoff, definitely create a factual issue as to the parties intent to be bound by the Online Manual."  Pl.'s Opp'n Mem. at 8.  Thus, Plaintiff contends that the progressive discipline policy, which pertained to employee attendance, work performance, and behavior, were sufficient to give rise to contractual liability on the part of Mass Mutual.   That policy stated, in part:

> From time to time, problems arise that relate to attendance, work performance or behavior.  Wherever possible, employees with more than three months of service will be given the opportunity to correct such problems.  Management counseling often solves the problems, but if this is ineffective, in most cases, Corporate Human Resources may be contacted and the employee may be issued a warning, placed on probation, or suspended without pay for a period of time.  Typically, a written statement of the problems and steps needed to correct it will be given to the employee by the employee's manager.  A copy of the statement will be retained with the employee's employment records.  If the problem is not corrected, further discipline action up to and including termination can occur.

> Def.'s Local Rule 56(a) Statement at 4.

10

Because Defendant terminated Plaintiff without providing her with an opportunity to correct the situation, Plaintiff alleges that Mass Mutual violated the progressive discipline policy and therefore, breached an implied contract with Plaintiff.[11]

An implied contract, as does an express contract, requires an agreement. *D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch.*, 202 Conn. 206, 211 n. 2, 520 A.2d 217 (1987). "A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." *Christensen v. Bic. Corp.*, 18 Conn.App. 451, 458, 558 A.2d 273 (1989). Furthermore, it is well established that just because a plaintiff believes certain provisions constitute a contract does not bind the defendant without evidence that the defendant actually intended to be bound by such a contract. *Id.*

In the instant case, crucial to Plaintiff maintaining an implied contract claim is the allegation that the disclaimers in Mass Mutual's Online Guide and Compliance Guide are not

---

[11]    While Plaintiff's complaint is not a model of clarity, to the extent she alleges that certain statements in Mass Mutual's Compliance Guide also gave rise to contractual liability on the part of Mass Mutual, this claim fails as well. In support of her assertion that the Compliance Guide created an implied contract with Mass Mutual, Plaintiff points to a sentence that reads, "Mass Mutual will [t]reat its employees consistently with integrity and fairness in all dealings." Def.'s Local Rule 56(a) Statement at 6. Given this sentence, Plaintiff's argument seems to be that Mass Mutual did not treat Plaintiff with good faith and fairness in the same manner as it had other employees by failing to terminate either Mr. Derouin or Ms. Bates for their involvement in the incident and by unfairly terminating Plaintiff for her actions. Assuming Plaintiff is alleging that Defendant breached an implied covenant of good faith and fair dealing existing between the parties by virtue of the statements located in Mass Mutual's Compliance Guide, Plaintiff's claim fails. While it is true that under Connecticut law "[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement," an at-will employee can only prevail on such a claim if the employee is able to establish that the employer violated public policy in the firing of the employee. *See Carbone v. Atl. Richfield Co.*, 204 Conn. 460, 470, 528 A.2d 1137 (1987); *Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 479 A.2d 781 (1984). In all other instances where employment is clearly at-will, an employer generally cannot be deemed to lack good faith in exercising an expressed right to terminate. *Carbone*, 204 Conn. at 470-71, 528 A.2d 1137. In the instant case, as Plaintiff does not allege any violation of public policy, Plaintiff is unable to maintain a breach of implied contract claim on this ground. More significantly, however, as previously discussed in regards to the Online Guide, is the fact that Mass Mutual unequivocally disclaimed any intent to be bound by the provisions of the Compliance Guide. Mass Mutual's Compliance Guide contained a definitive explicit disclaimer so entitled, located clearly on the second page of the manual. Moreover, Plaintiff agreed to the terms of the Compliance Guide less than two months prior to her termination. Consequently, because the Compliance Guide contained an express statement disclaiming any contractual intent, there is no evidence that Mass Mutual intended to be bound by the provisions pertaining to good faith and fair dealing in this manual.

sufficiently clear, and therefore, not effective.  *Ross*, 218 F. Supp. 2d at 262.  The finding that both the Online Guide and Compliance Guide contained express enforceable waivers is fatal to Plaintiff's implied contract claim.  Nevertheless, even if both policy manuals were found not to contain express disclaimers, Plaintiff's implied contract claim would still fail.  Plaintiff fails to support her conclusory statement that someone from Mass Mutual instructed her she would not be discharged if she followed the provisions in the manual with any evidence.  "Conclusory allegations will not suffice to create a genuine issue."  *Delaware*, 902 F.2d at 178.

Mass Mutual's Online Guide contained express enforceable disclaimers on each and every page of the Online Guide, including the page on which the progressive discipline policy was enunciated.  Moreover, the language used in the progressive discipline policy was not sufficiently promissory or definite to sustain Plaintiff's claim of an implied contract.  For instance, the policy did not state the disciplinary procedures were mandatory but stated that "[w]herever possible, employees...will be given the opportunity to correct such problems."  Def.'s Local Rule 56(a) Statement at 4.  Further, the progressive discipline policy is set forth in vague language such as "may be" and "typically."  *Id*.  Consequently, Plaintiff cannot sustain an implied contract claim premised on Mass Mutual's progressive discipline policy.

In sum, there is no evidence that Mass Mutual intended to be bound by the provisions of the progressive discipline policy contained within its Online Guide.  The Online Guide contained express statements disclaiming any contractual intent.  Accordingly, as there is no genuine issue of material fact as to whether an implied contract was created, Defendant is entitled to summary judgment on this claim as well.

**III.    CONCLUSION**

For the reasons discussed herein, Defendant's Motion for Summary Judgment (Doc. No.

35) is **granted**.

SO ORDERED.

Dated at New Haven, Connecticut, April  14 , 2004.


_____/s/_____

Peter C. Dorsey
United States Senior District Judge

13